UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
|
MATTHEW JOSEPH CREHAN,                                          | Case No. 1:09-cv-280
|
    Plaintiff,                                              |
| HONORABLE PAUL L. MALONEY
    v.                                                       |
|
JAMES DAVIS, individually and in his representative             |
capacity as a Police Officer for the City of Norton Shores,     |
|
    Defendant.                                               |
|
_____|

# OPINION and ORDER

**Granting in Part and Denying without Prejudice in Part
the Defendant's Motion to Dismiss or for Summary Judgment:**

Granting Summary Judgment to Defendant on the Federal Claim due to Qualified Immunity

Declining Supplemental Jurisdiction over State-Law Claims
Dismissing State-Law Claims without Prejudice

**Terminating and Closing the Case**

Matthew Joseph Crehan ("Crehan") has asserted a Fourth Amendment excessive-force claim against City of Norton Shores, Michigan police officer James Davis ("Davis"), as well as claims arising under Michigan state law. Davis has moved for summary judgment on the federal claim on the basis of qualified official immunity, and he has moved to dismiss the state-law claims on different grounds. For the reasons that follow, the court will grant summary judgment to Officer Davis on the federal claim due to qualified immunity and will decline supplemental jurisdiction over Crehan's state-law claims.

**BACKGROUND**

On April 13, 2007, a police patrol car activated its overhead lights while driving behind plaintiff Crehan after Crehan had turned from westbound Norton Street onto northbound Davis Street. *See* Defendant's Motion for Summary Judgment ("Def's MSJ") Exhibit A ("Ex A) (Plaintiff's Response to Request for Admission No. 1 ("Admission 1")). After the vehicles turned westbound on Kloap Street, the police car shined a spotlight on Crehan's vehicle. *Id.* at Admission 2. Then, after the vehicles turned northbound onto Glenside Street, the police car activated its siren. *Id.* at Admission 3. Crehan acknowledges that he was aware that a police vehicle was behind him at that time with its lights and siren activated while he was driving northbound on Glenside, and that nonetheless he did not pull over and stop the car. *Id.* at Admissions 4 and 5. Instead, Crehan turned westbound on Summit, while the police car still had its overhead lights and siren activated. *Id.* at Admission 6.

At the time of the incident, Crehan was driving with a suspended driver's license, he knew that there was an outstanding civil bench warrant for his arrest, and the license plate on the car he was driving (588D32) was not registered to that car. *See* Def's MSJ Ex A at Admissions 7-9. But Crehan states, without contradiction from Officer Davis, that when Davis employed force against him, Davis did not yet know Crehan's identity and so did not know about the suspended license or the outstanding warrant. *See* P's Opp at 4. Crehan also points out, again without contradiction from Officer Davis, that the vehicle he was driving had not been reported lost, missing, or stolen as of April 13, 2007. *See* P's Opp at 6.

In any event, Crehan continued driving with knowledge that there was a police car running its overhead lights and blaring its siren behind him, not stopping until he reached his home at 1519

West Summit Road. *See* Def's MSJ Ex A at Admission 10. According to Crehan, when he stopped in his driveway, he put his vehicle in "park", shut it off, opened the door, exited the car, and put his hands up in the air. Crehan heard shouts of "get on the ground", then felt his arm twisted behind his back and his body jammed into the cement driveway, inflicting chest contusions and a broken kneecap. *See* Def's MSJ Ex A at Admission 11 and Comp ¶¶ 16-18.

Crehan has submitted an affidavit which provides additional allegations "fleshing out" the incident from his perspective. Namely, Crehan attests that "as [he] was getting on the ground, while [already] in the 'push-up' position, defendant twisted affiant's arm behind his back, then forcefully slammed his body into the cement driveway." Notarized Affidavit of Plaintiff Matthew Joseph Crehan executed April 6, 2010 ("P's Aff") ¶ 5. Significantly, Crehan also attests that Davis "never gave [him] the chance to completely 'get on the ground' before he inflicted chest contusions and a broken kneecap on [him] . . . ." P's Aff ¶ 6.

Crehan was convicted of Fleeing and Eluding - Third Degree in violation of MICH. COMP. LAWS § 750.479a(3). Section 750.479a, which is entitled Failure to Obey Directions of Police or Conservation Officer [and] Other Offenses, provides as follows, in pertinent part:

(1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal, by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop[,] shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

(2) Except as provided in subsection (3), (4) or (5), an individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony punishable by imprisonment for not more than 2 years or a fine of not more

than $2,000.00, or both.

(3) Except as provided in subsection (3), (4) or (5), an individual who violates subsection (1) is guilty of third-degree fleeing and eluding, a felony punishable by imprisonment for not more than 5 years or a fine of not more than $5,000.00, or both, if 1 or more of the following circumstances apply:

(a) The violation results in a collision or accident.

(b) A portion of the violation occurred in an area where the speed limit is 35 miles an hour or less, whether that speed limit is posted or imposed as a matter of law.

(c) The individual has a prior conviction for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

MICH. COMP. LAWS § 750.479a(1) - (3).[1] By contrast, Crehan notes, he was not prosecuted, let alone convicted, for resisting arrest or the like. Crehan seems to imply that if he had actually posed a threat to Officer Davis at the time Davis forcefully pushed him down to the ground, he would have been charged with such an offense, not merely fleeing and eluding from continuing to drive the car to his home.

**LEGAL STANDARD: SUMMARY JUDGMENT**

"Summary judgment is proper if the 'pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Portinga v. Taylor*, 2009 WL 910800, *5, – F. Supp.2d –, – (W.D. Mich. Apr. 2, 2009) (Maloney, C.J.) (quoting *Patterson v. Hudson Area*

---

[1] The current version of MICH. COMP. LAWS § 750.479a is identical to the one in effect on April 13, 2007. Section 750.479a was last amended by P.A. 2002 No. 270, effective July 15, 2002.

*Schools*, 551 F.3d 438, 444 (6th Cir.) (quoting FED. R. CIV. P. 56(c)), *cert. denied*, – U.S. –, 130 S.Ct. 299 (2009); *see also Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 363 (6th Cir. 2009).[2] *Accord Alderman v. JC Dev. Communities, LLC*, 2009 WL 2607084, *1 (Mich. App. Aug. 25, 2009) (p.c.) (P.J. Owens, Servitto, Gleicher) ("Summary disposition is proper when, upon examining the pleadings, admissions and other evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.") (citing *Brown v. Brown*, 739 N.W.2d 313, 316 (Mich. 2007)).

The movant has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *ARS*, 602 F. Supp.2d at 845 (citing *Conley*, 266 F. App'x at 404 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial – e.g., if the movant is defending against a claim – "it may meet its burden merely by showing 'that there is an absence of evidence to support the moving party's case.'" *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (quoting *Celotex*, 477 U.S. at 323), *reh'g & reh'g en banc denied* (6th Cir. Oct. 23, 2009). *See also Wilson v. Continental Dev. Co.*, 112 F. Supp.2d 648, 654 (W.D. Mich. 1999) (Bell, J.) (movant "need not support its motion with affidavits or other materials 'negating'

---

[2] Before the December 2007 amendment, FED. R. CIV. P. 56(c) stated that summary judgment is appropriate if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Appalachian Railcar Servs., Inc. v. Consumers Energy Co.*, 602 F. Supp.2d 829, 845 (W.D. Mich. 2008) (Maloney, J.) ("ARS") (quoting *Conley v. City of Findlay*, 266 F. App'x 400, 404 (6th Cir. 2008) (Griffin, J.)).

The amendment was stylistic only. *Portinga v. Taylor*, 2009 WL 910800, *5 n.9 (W.D. Mich. Apr. 2, 2009) (Maloney, C.J.) (citing *Dobrowiak v. Convenient Family Dentistry, Inc.*, 315 F. App'x 580, 584 n.4 (6th Cir. 2009) (citing FED. R. CIV. P. 56(c), Adv. Comm. Notes))).

the opponent's claim"; rather, its initial burden is only to "point out to the district court that there is an absence of evidence to support the nonmoving party's case . . . .") (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)), *aff'd o.b.*, No. 99-2113, 234 F.3d 1271, 2000 WL 1679477 (6th Cir. Nov. 2, 2000). *Accord Claspell v. Denso Mfg. Michigan, Inc.*, 2001 WL 1545684, *2 (Mich. App. Dec. 4, 2001) (p.c.) (P.J. O'Connell, Sawyer, Smolenski) ("That standard is exactly the same as the standard for summary disposition used under Michigan law . . . .").

Once the movant has met its burden, the non-movant must present "'significant probative evidence'" to demonstrate that there is more than "'some metaphysical doubt as to the material facts.'" *ARS*, 602 F. Supp.2d at 845 (citing *Conley*, 266 F. App'x at 404 (quoting *Moore*, 8 F.3d at 339-40)). The non-movant may not rest on the mere allegations of his pleadings. *See Griffin v. Reznick*, 609 F. Supp.2d 695, 698 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, FED. R. CIV. P. 56(e) and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)); *see also Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 278 (6th Cir. 2009); *accord Kachudas v. Invaders Self Auto Wash, Inc.*, 2009 WL 2767303, *2 (Mich. App. Sept. 1, 2009) (p.c.) (P.J. Wilder, Cavanagh, Murray) ("When the burden of proof at trial would rest on the non-moving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial.") (citing *The Healing Place at No. Oakland Ctr. v. Allstate Ins. Co.*, 744 N.W.2d 174, 177 (Mich. App. 2007) (citing, *inter alia*, *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 317 (Mich. 1996))).[3]

---

[3]

However, "[a] *verified* complaint 'carries the same weight as would an affidavit for the purposes of summary judgment." *ACLU of Ky. v. Grayson Cty., Ky.*, – F.3d –, –, 2010 WL 114361, *3 (6th Cir. Jan. 14, 2010) (McKeague, J., joined by D.J. Forester) (citing, *inter alia*, *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008)) (emphasis added).

If the movant puts forward evidence – such as affidavits, purported business records, purported government records, etc. – the other party cannot withstand summary judgment by simply sitting mute and failing to challenge the authenticity, admissibility, or veracity of those documents. *See Leys v. Lowe's Home Ctrs., Inc.*, – F. Supp.2d –, –, 2009 WL 3255597, *2 (W.D. Mich. 2009) (Maloney, C.J.) (citing *Donoho v. Smith Cty. Bd. of Ed.*, 21 F. App'x 293, 298 (6th Cir. 2001) (Boggs, J.) (affirming summary judgment for employer, Circuit noted that plaintiff's "affidavit does nothing to challenge the evidence put forward by the defendants that the last IEP meeting . . . also included provision to her of the apparently usual verbal and written notices of her rights."))[4]

Moreover, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; there be some genuine issue of *material* fact. *ARS*, 602 F. Supp.2d at 845 (citing, *inter alia*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))). And the non-movant "cannot defeat a properly supported motion for summary judgment motion by 'simply arguing that it relies solely or in part upon credibility determinations.'" *Heggie v. Kuzma*, 2009 WL 594908, *10 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) (quoting *Fogerty v. MGM Group Holdings, Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (non-movant may not

---

[4]

*See, e.g., SBA v. McDonald*, 1985 WL 13600, *1 (6th Cir. Aug. 15, 1985) (p.c.) ("Even assuming the checks and money orders were mailed, there is no genuine issue as to their receipt. McDonald offers nothing to dispute the sworn affidavit that payment was not received. Payment does not occur without receipt. Summary judgment was appropriate.");

*US v. One 1983 Mercedes-Benz 380SL*, 1991 WL 276262, *6 (6th Cir. Dec. 20, 1991) ("[C]laimant's verified claim contains a sworn statement by the company's general manager '[t]hat at no time did A.D.E. have any knowledge or reason to believe that the property in which it claims an interest was being used or would be used in violation of the law.' The government has produced nothing to dispute the truth of that assertion. * * * The government has pointed to no facts that would entitle it to defeat A.D.E.'s claim, and A.D.E. is entitled to summary judgment . . . .");

"have a trial on the hope that a jury may disbelieve factually uncontested proof")).

The court must accept the non-movant's factual allegations, *ACLU v. NSA*, 493 F.3d 644, 691 (6th Cir. 2007) (concurrence) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *cert. denied*, – U.S. –, 128 S.Ct. 1334 (2008),[5] and view the evidence in the light most favorable to the non-movant, giving it the benefit of all reasonable inferences. *Fox v. Eagle Dist. Co., Inc.*, 510 F.3d 587, 592 (6th Cir. 2007) (Griffin, J.); *see also Patterson*, 551 F.3d at 445.[6]

But the court considers its evidence only to the extent that it would be admissible at trial. *See Elliott Co. v. Liberty Mut. Ins. Co.*, 2009 WL 750780, *10 (6th Cir. Mar. 23, 2009) (Moore, Clay, Kethledge) (on appeal from grant of summary judgment, panel declined to consider extrinsic evidence which would not be admissible under applicable state contract law) (citation omitted); *Bond v. Burson*, No. 96-5459, 134 F.3d 370, 1998 WL 24993, *4 (6th Cir. Jan. 16, 1998) ("The district court also acted within its discretion in denying plaintiff's motion to strike the Smith affidavit from defendants' summary judgment motion. By relying upon the affidavit only for the purposes of establishing the history of the case and DHS's custody of plaintiff, the court properly disregarded those facts not admissible at trial.").[7]

Ultimately, entry of summary judgment is appropriate "against a party who fails to make a

---

[5] *Accord Fall v. Loudon*, 2008 WL 375989, *6 (Mich. App. Feb. 12, 2008) (citing *Dolan v. Continental Airlines/Continental Express*, 563 N.W.2d 23, 26 (Mich. 1997)).

[6] *Accord Denha v. Dart Props., Inc.*, 2009 WL 30459, *1 (Mich. App. Jan. 6, 2009) (p.c.) (P.J. Zahra, JJ. O'Connell & Fort Hood) (citing *Walsh v. Taylor*, 689 N.W.2d 506, 511 (Mich. App. 2004) (citing *Spiek v. MDOT*, 572 N.W.2d 201 (Mich. 1998))).

[7] *Accord ARS*, 602 F. Supp.2d at 845 (applying Michigan law) (citing *Healing Place*, 744 N.W.2d at 177 (citing MICH. CT. R. 2.116(G)(6) and *Veenstra v. Washtenaw Country Club*, 645 N.W.2d 643, 648 (Mich. 2002))).

showing sufficient to establish the existence of an element to that party's case, and on which that party w[ould] bear the burden of proof at trial." *Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 447 (6th Cir. 2007) (quoting *Celotex*, 477 U.S. at 322).[8] "As Chief Judge Bell has characterized the post-trilogy summary-judgment standard, '[w]hile preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial.'" *Ellis v. Kaye-Kibbey*, 581 F. Supp.2d 861, 874 (W.D. Mich. 2008) (Maloney, C.J.) (quoting *Wilson*, 112 F. Supp.2d at 654); *see also Townsend v. US*, 2000 WL 1616081, *1 (W.D. Mich. Aug. 31, 2000) (McKeague, J.); *Eckford-El v. Toombs*, 760 F. Supp. 1276, 1268 (W.D. Mich. 1991) (Hillman, J.).

**LEGAL STANDARD: QUALIFIED OFFICIAL IMMUNITY**

"The purpose of the qualified-immunity defense is to protect government officials from undue interference with their duties and from potentially disabling threats of liability. *Binay v.*

---

[8]

A trilogy of 1986 Supreme Court decisions "made clear that, contrary to some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances . . . ." *Collins v. Assoc'd Pathologists, Ltd.*, 844 F.2d 473, 475-76 (7th Cir. 1988). *Accord In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003) (the trilogy "encourage the use of summary judgment as a means to dispose of factually unsupported claims.");

*Hurst v. Union Pacific Rail Co.*, 1991 WL 329588, *1 (W.D. Okla. 1991) ("This trilogy of cases establishes that factual and credibility conflicts are not necessarily enough to preclude summary judgment and encourage that a summary judgment be used to pierce the pleadings and determine if there is in actuality a genuine triable issue."), *aff'd*, 958 F.2d 1002 (10th Cir. 1992);

*Bowser v. McDonald's Corp.*, 715 F. Supp. 839, 840 (S.D. Tex. 1989) (the trilogy "encouraged federal district courts to use summary judgment more frequently and economically by changing the movant's burden of production . . . and by allowing qualitative review of evidence") (citations omitted).

*Bettendorf*, – F.3d –, 2010 WL 1541295, *4 (6th Cir. Apr. 20, 2010) (Keith, <u>Clay</u>, Griffin) (quoting *Elder v. Halloway*, 510 U.S. 510, 5 14 (1994) (unanimous)). Absent such immunity, the "'prestige and pecuniary rewards'" of government employment might "'pale in comparison to the threat of civil liability,'" *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 549 F.3d 641, 660 (6th Cir. 2008) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998)), *vac'd on other grounds*, 2009 WL 1045462 (6th Cir. Mar., 2009) (*en banc*), deterring able people from serving in such positions.

Under the doctrine, a government employee performing a discretionary function generally is shielded from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Moreover, qualified immunity is "'an immunity *from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Scott*, 550 U.S. at ___ n.2, 127 S.Ct. at 1774 n.2 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). *See, e.g., Smith v. Lawanee Cty.*, – F.3d –, – n.1, 2010 WL 1439959, *5 n.1 (6th Cir. Apr. 13, 2010) (Martin, Rogers, <u>McKeague</u>) (expressing strong disapproval of district court's statement that it would "permit the plaintiff, at the appropriate time when sufficient discovery is conducted, to move for Rule 60(b) relief" from judgment granting qualified immunity, because qualified immunity protects against the incidents of suit, including discovery).

Once the defendant asserted the defense of qualified immunity, the burden shifted to the plaintiff to show that he is *not* entitled to qualified immunity. *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007). To carry this burden, Crehan must show that a reasonable person in Officer Davis's position would have known that employing this type and degree of force under the circumstances alleged violated his Fourth Amendment rights under U.S. Supreme Court or Sixth

Circuit precedent as it stood on April 12, 2007 (the day before the incident).

Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional, in light of preexisting law, the unlawfulness must be apparent. *Wilson v. Layne*, 526 U.S. 603, 615 (1999) and *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2005). "Ordinarily, a Supreme Court or Sixth Circuit [Court of Appeals] decision on point is necessary" to clearly establish the right in the relevant context and defeat qualified immunity. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004) and *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002) (Batchelder, J.).[9]

Unpublished Sixth Circuit decisions cannot "clearly establish" a principle or the proper application of a principle to a set of facts, because such decisions are not binding; the same is true of district-court decisions, whether published or unpublished. *See Argue v. Burnett*, 2010 WL 1417633, *5 (W.D. Mich. Apr. 1, 2010); *Wheeler v. City of Lansing*, 677 F. Supp.2d 965, 977 (W.D. Mich. 2010) (Maloney, C.J.) ("[F]or qualified immunity purposes, an unpublished Sixth Circuit decision cannot put an official on notice that his conduct is unlawful.") (citing *Heggen v. Lee*, 284 F.3d 675, 687 (6th Cir. 2002) ("Addressing the issue of qualified immunity, this court first stated that there was no published opinion from the Sixth Circuit . . . or Supreme Court that would compel the

---

[9]

*See Harlow*, 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."); *see, e.g., Baldridge-El v. Gundy*, 2000 WL 1721014, *2 (6th Cir. Nov. 8, 2000) (p.c.) ("The ECF defendants were entitled to qualified immunity. Baldridge-El's claims arose between June and September 1997. At that time, it was not clearly established that the ADA or the RA applied to prisons. The Supreme Court decision that held that the ADA applied to state prisoners was not decided until June 1998.") (internal citations omitted); *Tate v. United Mgmt. Care, Inc.*, 2000 WL 1679435, *2 (6th Cir. Oct. 31, 2000) (p.c.) (same holding regarding ADA and state prisoners).

conclusion that the clerk could not dismiss her deputy clerks for political reasons. *With no clearly established law in place . . . .*")).[10]

This means that Crehan cannot defeat Officer Davis's qualified-immunity defense with pre-April 13, 2007 precedent "clearly establishing" her *general* Fourth Amendment right to be free from excessive force at the hands of the government: "'A constitutional right must be clearly established *in a particularized sense*. 'The contours of the right must be sufficiently clear that a reasonable official would understood that what he is doing violates that right.'" *Garrison v. Glentz*, 2005 WL 2155936, *5 (W.D. Mich. Sept. 5, 2005) (Miles, J.) (quoting *Rippy v. Hataway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). *See also Dever v. Kelly*, 566 F. Supp.2d 703, 715 (S.D. Ohio 2008) ("The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted.") (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

If a reasonable police officer in Davis's position "could disagree on the issue" of whether Davis's use of force violated his right to be free from excessive force *in this specific context and these specific circumstances*, immunity should be recognized. *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *Saylor v. Bd. of Ed.*, 118 F.3d 507, 515 (6th Cir. 1997) ( "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what

---

[10]

*Accord Hogan v. Carter*, 85 F.3d 1113, 1118 (**4th Cir.** 1996) ("We could not allow liability to be imposed upon public officials based upon unpublished opinions that we ourselves have determined will be binding only upon the parties immediately before the court."); *Green v. Post*, 574 F.3d 1293, 1306 (**10th Cir.** 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions.") (citing *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1398-99 (10th Cir. 1992)).

defendant is doing violates federal law *in the circumstances*." (emphasis added).[11]  "[T]his accommodation for reasonable error exists because 'officials should not always err on the side of caution' because they fear being sued."  *Modrell v. Hayden*, 636 F. Supp.2d 545, 560 (W.D. Ky. 2009) (Russell, J.) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984))).

**DISCUSSION:  Federal Excessive-Force Claim**

"*[A]ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Schreiber v. Moe*, 596 F.3d 323, 331-32 (6th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  In determining whether Officer Davis's use of force was reasonable, the court "must balance 'the nature and quality of the intrusion on [Crehan]'s Fourth Amendment interests against the countervailing government interests at stake.'"  *Schreiber*, 596 F.3d at 332 (quoting *Graham*, 490 U.S. at 396).  In doing so, the court must "pay particular attention to 'the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

---

[11]  *See, e.g., Salaam v. McKee*, 2008 WL 363598, *5 (W.D. Mich. Feb. 11, 2008) (Maloney, J.) (prison official entitled to immunity against First Amendment freedom-of-religion claim; binding federal case law at the time of the incident did not clearly establish prisoner's specific right to have a religious observance at a certain time of day); *contrast Wappler v. Brevard*, 2008 WL 4534037 (W.D. Mich. Sept. 30, 2008) (prison employee not entitled to immunity against prisoner's § 1983 claim that employee violated his constitutional right not to have his legal mail opened outside his presence, as that right was established by published Sixth Circuit decisions pre-dating the challenged conduct, notwithstanding later, arguably-contrary *dicta* from Sixth Circuit Court of Appeals).

*Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396). Furthermore, the reasonableness of Officer Davis's use of force must be judged from the perspective of a reasonable officer on the scene, "'rather than with the 20/20 vision of hindsight.'" *Schreiber*, 596 F.3d at 332 (quoting *Graham*, 490 U.S. at 396).

The standard focuses only on *objective* reasonableness, so the court may not inquire into or speculate about the officer's underlying intent or motivation. *See Bozung v. Rawson*, 2009 WL 2413624, *6 (W.D. Mich. Aug. 4, 2009) (Maloney, C.J.) (citing *Graham*, 490 U.S. at 397), *recon. denied*, 2009 WL 5149917 (W.D. Mich. Dec. 16, 2009). Moreover, the reasonableness calculus must make allowance for the fact that "police officers are often forced to make split-second decisions – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force necessary in a particular situation", *Graham*, 490 U.S. at 396-97, and hesitation, or the employment of inadequate force, can cost the officer his life. *Cf. Swann v. City of Richmond, Virginia*, 309 F. App'x 757, 759 (4th Cir. 2009) (approving district court's statement that officer's "pausing to reflect upon his options could have cost him his life"); *Abney v. Coe*, 493 F.3d 412, 415-16 (4th Cir. 2007) ("The requirement of reasonableness does not, however, demand statistical precision; it allows police officers 'latitude in exercising what are inescapably discretionary functions replete with close judgment calls.'") (quoting *Gooden v. Howard Cty.*, 954 F.2d 960, 964 (4th Cir. 1992) (*en banc*)).

Defendant Davis relies heavily on precedent holding that fleeing and eluding is a crime of violence for purposes of the Armed Career Criminal Act and/or the U.S. Sentencing Guidelines. While the ACCA and the Guidelines are obviously not implicated directly by Davis's claim of qualified immunity, the Sixth Circuit's pre-April 2007 holdings regarding the inherently dangerous nature of fleeing and eluding police are relevant to the "nature of the crime" criterion, *see Graham*,

490 U.S. at 396. Davis argues as follows:

> [T]he conduct that plaintiff engaged in – fleeing and eluding a police officer – has been found by the Federal courts to constitute a "crime of violence."[12] Moreover, by its very nature it reflects that the plaintiff was trying to actively evade arrest by flight. These are two of the primary factors that *Graham* instructs are part of the balancing test [when determining whether a government employee's use of force was "reasonable" under the circumstances for Fourth Amendment purposes]. * * *
>
> Significantly, the Court [has] observed: "At the same time that flight itself creates a risk of injury to others, so too does the suspect's eventual apprehension. By making a deliberate choice to disobey a police officer, the motorist provokes an inevitable, escalated confrontation with the officer." [*US v. Martin*, 378 F.3d 578, 582 (6th Cir. 2004).] The Court went on to discuss the [post-pullover] dangers created when a suspect engages in this conduct:
>
>> In this regard, fleeing and eluding resembles escape, which nine courts of appeals (including this one) have agreed constitutes a "crime of violence" under the Guidelines, regardless of whether the defendant forcefully escaped from a maximum security prison or walked away from a halfway house. Both escape and fleeing from a police officer represent continuing offenses which heighten the emotions and adrenaline levels of the parties involved, and which generally end with a confrontation between the officer and the escapee or fleeing driver.
>
>> Such a confrontation inherently presents the serious potential risk of physical injury because the fleeing driver intent on his goal of eluding the officer faces the decision of whether to dispel the officer's interference or yield to it.
>
> * * *
>
> *See also United States v. Young*, 580 F.3d 373, 378 (6th Cir. 2009) ("[I]n a study involving fifty-six law enforcement agencies across the country, 314 injuries (including fatalities) resulted from 7,737 reported pursuits. That constitutes a rate of .04 injuries-per-pursuit and exceeds the rate of injuries per arson . . . [.]"). Thus,

---

[12]

The court reminds the defense that in a qualified-immunity analysis, this court is not permitted to consider what "the Federal courts" have held. The only relevant inquiry is what the United States Supreme Court has held, and what the U.S. Court of Appeals for the *Sixth* Circuit has held *in published decisions*. Police officers working in Michigan, Ohio, Tennessee and Kentucky are charged with constructive knowledge of said binding precedents and must obey them, but they are not required to know or follow any other federal judicial decisions.

> Officer Davis was confronted with a suspect who was engaged in a crime of violence and who had just demonstrated his willingness to flee to avoid arrest [JUDGE: by driving, at a normal rate of speed, without accelerating or making evasive maneuvers, with his lights on, directly to his own home?].
>
> Under these circumstances was it excessive force for officer Davis to perform a take-down move to immediately bring this tense situation to a close and to ensure that the plaintiff did not decide to flee again? Clearly it was not. This is the quintessential situation where not every push and shove should be second-guessed in the safety and security of a court's chambers [JUDGE: forcing someone face-first into concrete pavement, so hard as to break his kneecap and cause chest contusions, is now merely a "push" or "shove"??]. Officer Davis was faced with a choice: he could see if the plaintiff was sincere about ceasing flight and submitting to arrest, thereby risking another flight on foot or worse, or he could ensure that there would be no additional flight by forcefully taking custody of the plaintiff and putting the episode to an end. It was reasonable under the Fourth Amendment for Officer Davis to choose the latter course.

Def's MSJ at 5-7 (omitting citations to decisions from other circuits, quotation marks, and alteration brackets).

In assessing Crehan's excessive-force claim, this court must construe all factual allegations in the record in the light most favorable to him. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004). Once the court has done so, "the question whether [Officer Davis]' actions were objectively reasonable is 'a pure question of law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).

The court need not decide whether Officer Davis's use of force was reasonable for Fourth Amendment purposes, and it intimates no opinion on that issue. Even assuming *arguendo* that Davis's use of force against Crehan was *un*reasonable, the court determines as a matter of law that such unreasonableness was not necessarily apparent to a reasonable officer in Davis's position on April 13, 2007. Crehan's account may or may not be accurate, but the court is obligated to accept his version of the facts because he is opposing summary judgment. According to Crehan, Davis gave

a command to "get down" on the ground, but never afforded him an opportunity to comply before employing force severe enough to break his kneecap and cause chest contusions. Even taking this as true, however, Crehan identifies no Supreme Court or published Sixth Circuit decisions predating April 13, 2007 which *clearly established* that performing this move under those circumstances (or materially similar circumstances) constituted excessive force.

As Officer Davis notes, he was faced with a difficult choice between only *two* options – force Crehan onto the pavement to minimize the risk that he would suddenly attack or again flee, or wait to see if he was indeed going to get all the way down to the ground (thereby "risking another flight on foot or worse", as Davis aptly puts it). The court agrees with Davis's reasoning that for purposes of qualified immunity, while he "might have misapprehended the amount of force called for under the circumstances", nonetheless "[if] he did so . . . that mistake was reasonable." Defs' MSJ at 11. Crehan contends that his conduct made it clear to Officer Davis that he had no intent or plan to flee after stopping the vehicle:

> Contrary to defendant's assertions, plaintiff was not "trying to actively evade arrest by flight" (Defendant's brief, p. 5) If plaintiff did not originally intend to stop, he certainly would not have stopped in the driveway of his residence, boxing himself in between the closed garage door and defendant's vehicle. After all, based on the license plate displayed on plaintiff's vehicle, it would have been impossible for defendant to positively identify plaintiff until face to face contact was made. If plaintiff had never intended that defendant discover his identity, he simply would not have come to a stop. Plaintiff's intentions speak for themselves.
> \* \* \*
> All that was necessary under the circumstances was for the defendant to give plaintiff the chance to follow his directions to "Get on the Ground", so he could easily handcuff him.

P's Opp at 8 and 9. It is true, as Crehan notes, that it is excessive as a matter of law (and was recognized as excessive in April 2007 in our Circuit) to use force after the suspect has already been

subdued, incapacitated or "neutralized." *See Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 608 (6th Cir. 2006) (Richard Allen Griffin, J.) (citing, *inter alia*, *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) and *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002)).

But Crehan fails to explain what legal authority *compelled* Davis to conclude that Crehan was completely and safely neutralized, with no possibility of attack, resistance or further flight. The alleged fact that Crehan was starting to get down would not *conclusively* establish, beyond a doubt, that Crehan was not using the seeming start of compliance as a ruse to get the officer to momentarily "let his guard down." The court finds no binding precedent then in existence which would have clearly alerted a reasonable police officer that he was constitutionally required to wait – possibly at grave risk to his life, the life of other officers who would pursue if Crehan again fled, and members of the public – to see whether Crehan would, for the first time during the incident, begin to cooperate with lawful commands rather than using the appearance of compliance as a chance to surprise the officer by attacking him or running away.

Lastly, there is no allegation that Officer Davis made any comments to or about Crehan which suggest that he employed force out of malice rather than a belief – mistaken or not – that such force was necessary to minimize the still-lingering risk of attack or further flight. *Contrast Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607 (6th Cir. 2006) (denying qualified immunity) (when striking plaintiff in the head with baton after plaintiff put his hands in the air in the "surrender" position, police officer yelled "that's for running from me"); *Pigram v. Chaudoin*, 2006 WL 2860773, *3 (6th Cir. Oct. 5, 2006) (police officer's slap of plaintiff "cannot be reasonably be construed as a means of subduing Pigram" where the officer told plaintiff contemporaneously that the slap was because plaintiff had a "smart-ass mouth").

For purposes of qualified immunity, then, Davis's conduct *at worst* falls within the doctrine's contemplated "ample room for mistaken judgments", *see Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Even with the benefit of the factual assumptions made on behalf of all parties opposing summary judgment, then, Crehan has not carried his burden of showing that Davis is not entitled to qualified immunity.

**DECLINING SUPPLEMENTAL JURISDICTION**

Finally, having resolved Crehan's federal claim, the court will follow usual Sixth Circuit practice and decline supplemental jurisdiction over his state-law claims (Def's MSJ at 11; P's Opp at 21-25; P's Reply at 6). *See Zanke-Jodway v. Capital Consultants, Inc.*, 2010 WL 1286219, *3 (W.D. Mich. Mar. 30, 2010) (Maloney, C.J.) ("'A federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.'") (quoting, *inter alia*, *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

# **ORDER**

Defendant's motion for summary judgment **[doc #36] is DENIED in part and DENIED without prejudice in part**:

Summary judgment is **GRANTED to defendant** on the federal excessive-force claim.

Pursuant to 28 U.S.C. § 1367(c), the court **DECLINES supplemental jurisdiction** over the state-law claims. The state-law claims are **DISMISSED without prejudice**.

A separate FED. R. CIV. P. 58 judgment will issue contemporaneously.

This is a final and immediately appealable order.

**IT IS SO ORDERED** on this 18th day of May 2010.

                                            /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            Chief United States District Judge